# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ACCESS INSURANCE HOLDINGS, INC., and ACCESS GENERAL AGENCY OF FLORIDA, INC., <br>                 Plaintiffs, <br><br> v. <br><br> LINCOLN GENERAL INSURANCE COMPANY, <br>                 Defendant. | Civ. No. 07-3313 |

## MEMORANDUM AND ORDER

March 28, 2008

This action arises from eleven "Arbitration Demands" served by defendant,

Lincoln General Insurance Co. ("Lincoln General"), a Pennsylvania corporation, on

plaintiffs Access Insurance Holdings, Inc. ("Access Holdings"), a Georgia corporation,

and Access General Agency of Florida ("Access Florida"), a Florida corporation.

Plaintiffs initiated this suit to enjoin the arbitration proceeding that Lincoln General has

sought to initiate through service of the "Arbitration Demands."  Now before the court are

(1) plaintiffs' "Motion to Stay Arbitration," docket # 3, which plaintiffs filed

contemporaneously with a "Complaint to Stay Arbitration and for Declaratory Relief,"

docket # 1, and (2) defendant's motion to dismiss plaintiffs' complaint, docket # 10.[1]

Upon consideration of these motions, and the parties' arguments at the March 24, 2008

hearing, the court will grant defendant's motion to dismiss plaintiffs' complaint.

## I.  Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a defendant moving for dismissal

of a complaint is entitled to dismissal if the complaint "fails to state a claim on which

relief can be granted."  Dismissal is warranted if the allegations of a complaint are not

"enough to raise a right to relief above the speculative level . . .  on the assumption that all

the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atlantic Corp. v.*

*Twombly*, 127 S. Ct. 1955, 1965 (2007) (citations omitted).  In addressing a motion to

dismiss, a court may consider "documents whose contents are alleged in the complaint

and whose authenticity no party questions, but which are not physically attached to the

pleading[.]"  *Pryor v. National Collegiate Athletic Ass'n*, 288 F.3d 548, 560

(3d Cir. 2002) (quotation omitted).

---

[1] This court has diversity jurisdiction of the case pursuant to 28 U.S.C. § 1332. Pennsylvania's "Uniform Arbitration Act" authorizes suit to "stay an arbitration proceeding threatened or commenced" where a plaintiff can prove "that there is no agreement to arbitrate."  42 Pa. Cons. Stat. § 7304(b).

## II.  Facts

The relevant facts, as recited in plaintiffs' complaint — which for the purpose of addressing the motion to dismiss, the court accepts as well founded — are as follows: Access Florida, a wholly-owned subsidiary of Access Holdings, was contractually charged with managing Lincoln General's automobile insurance policies in Florida.  The terms of this obligation were initially set forth in a contract between Lincoln General and Access Florida called a "Managing General Agency Agreement" ("Florida MGA").  This contract was superseded by a contract between Lincoln General and Access Holdings and "all related entities" called a "Program Manager Agreement" ("PMA"), which had an effective date of October 1, 2003.  Compl. at ¶ 12.  In May and June 2007, Lincoln General served eleven "Arbitration Demands," each purporting to invoke a right, under the PMA, to compel plaintiffs to submit to arbitration.  These "Arbitration Demands" alleged that Access Florida mismanaged claims arising from automobile accidents involving Lincoln General policyholders.  Eight of the "Arbitration Demands" — referred to in the complaint as the "Contested Arbitration Demands" — concern claims on Lincoln General insurance policies that were originally issued before October 1, 2003.

Plaintiffs' complaint did not attach copies of the Florida MGA, the PMA or the Arbitration Demands, but the documents, whose authenticity is not questioned, are integral to plaintiffs' allegations, and will therefore be addressed.  The salient features of these documents are as follows:

-3-

**A.  The Florida Managing General Agency Agreement**

The Florida MGA was executed on June 3, 2002 and had an effective date of May

1, 2002.  Fl. MGA. pmbl.  According to the preamble, the agreement was between

Lincoln General (the "Company")  and Access Florida (the "Manager"), and plaintiffs

allege that all duties in the Florida MGA were assumed by Access Florida, not Access

Holdings.  Compl. at ¶ 11.  However, the signature block for the Florida MGA is

captioned "ACCESS INSURANCE HOLDINGS, INC."  The agreement otherwise makes

no reference to Access Holdings.

The Florida MGA incorporates a contemporaneously-executed "Claims Service

Agreement," and states that "[t]he administration of claims shall be the subject of the

"Claims Service Agreement."  Fl. MGA art. VIII ¶ A.  The Florida MGA also contains an

arbitration provision stating that "[a]ny dispute or difference between the Company and

its Manager relating to the interpretation or performance of this Agreement . . . shall be

submitted to binding arbitration."  Fl. MGA art. XVII  ¶ B.  The Florida MGA further

provides that "[t]he validity, interpretation, and enforcement of this Agreement, including

the provisions relating to arbitration, shall be governed by the laws of the Commonwealth

of Pennsylvania."  Fl. MGA art. XX  ¶ C.

**B.  The Program Manager Agreement**

The PMA was executed on April 9, 2004, but had an effective date of October 1,

2003.  PMA art. I.  The parties to the PMA include Lincoln General (the "Company") and

Access Holdings and "all related entities," including Access Florida (referred to

"collectively and individually" as "Manager").  PMA pmbl.  The agreement includes a

clause superseding all prior agreements between the parties: "This Agreement constitutes

the entire agreement of the parties with respect to the subject matter herein and

supersedes any other previous agreements or quotations, whether written or oral, between

the Company and the Manager, unless specifically referred to within this Agreement."

PMA art. XX ¶ G.  In the same article, the PMA provides that a party does not waive its

rights under the agreement by having previously declined to exercise those rights:

> The failure of the Company or the Manager to insist on strict compliance with this
> Agreement, or to exercise any right or remedy shall not constitute a waiver of any
> rights provided under this Agreement, or stop the parties from thereafter
> demanding full and complete compliance or prevent the parties from exercising
> such a remedy in the future.

PMA art. XX ¶ B.

Article IV of the PMA delineates certain of "Manager's" responsibilities regarding

the settlement of claims.  The article further provides that "Manager's authority, if any, to

adjust, compromise, settle or pay any claim made on the Policies written or bound under

this Agreement is set forth in the ENDORSEMENTS attached hereto and made part of

this Agreement."  PMA art. IV.  These endorsements identify Access Florida as one of

the entities "authorized to conduct business under this Agreement,"  PMA

Endorsement A art. I, and provide that a "Guarantor" for Access Florida, Michael

McMenamin, will assume "any liability of the Managing General Agent which shall

accrue under the Agreement for any period preceding as well as any period following the term in the Agreement . . . ."  PMA Endorsement G  ¶ 2.  The endorsements also charge Access Florida with the duty to "[i]nvestigate liability, damages and coverages, evaluate, negotiate, claims through settlement or final disposition, and issue all claim payments with funds provided by the Company."  PMA Endorsement C art. I ¶ A.

> The PMA contains an arbitration clause providing, in part, that:

> In the event of any dispute between the Company and the Manager with reference to the interpretation, application, formation, enforcement or validity of this Agreement, or their rights with respect to any transaction involved, whether such a dispute arises before or after termination of this Agreement, such dispute, upon written request of either party, shall be submitted to the decision of a board of arbitration composed of two arbitrators and an umpire meeting at the Company's offices unless otherwise mutually agreed.

PMA art. XIX ¶ A.  The arbitration provision also provides that "[t]he Pennsylvania Arbitration Act shall govern the conduct of arbitrations pursuant to this agreement[,]" PMA art. XIX ¶ J, and the PMA further provides that "[t]he rights of the parties to this agreement shall be governed and construed in accordance with the laws of the Commonwealth of Pennsylvania without regard to Pennsylvania rules on conflict of laws." PMA art. XX ¶ A.

### C.  The "Contested Arbitration Demands"

Each "Contested Arbitration Demand" alleges that, at some point after October 1, 2003, a person injured by a Lincoln General policyholder contacted "Access" and sought compensation for his or her injuries.  Two of the "Contested Arbitration Demands"

concern claims on insurance policies issued before October 1, 2003, arising from

automobile accidents that occurred before that date.  Six of the "Contested Arbitration

Demands" also concern claims on insurance policies that antedated October 1, 2003, but

which arose from accidents occurring after that date.  The "Contested Arbitration

Demands" allege that plaintiffs' response to each of these claims was, in some manner,

deficient.  Consequently, the "Contested Arbitration Demands allege, Lincoln General was

forced to settle each of these claims for an amount greater than the limit on the insurance

policy held by the policyholder.[2]   Lincoln General alleges in the "Contested Arbitration

Demands" that, for each of these claims, plaintiffs are responsible for some portion of the

settlement amount.  The "Contested Arbitration Demands" further state that, "[a]t all times

relevant to the claims," plaintiffs had been Lincoln General's agents pursuant to the PMA,

and that, pursuant to the PMA, the dispute regarding the claims is to be submitted to

arbitration.  *See* Plaintiffs' Motion to Stay Arbitration, Docket # 3, Exh. 8-18.

In June 2007, after receiving the eight "Contested Arbitration Demands," plaintiffs'

counsel sent a letter to Lincoln General.  In the letter, plaintiffs denied that the disputes

underlying the "Contested Arbitration Demands" were "governed by or arbitrable under

---

[2] For example, in one of the Contested Arbitration Demands concerning an accident that occurred before October 1, 2003, Lincoln General alleges that counsel for the injured party contacted "Access" on July 6, 2004 and attempted to settle the party's claim for an amount equal to the limit on the Lincoln General insurance policy (a "policy limit demand").  "Access" allegedly rejected the policy limit demand, and Lincoln General was ultimately forced to settle with the injured party for an amount significantly above the policy limit.  *See* Plaintiffs' Motion to Stay Arbitration, Docket # 3, Exh. 9.

the Program Manager Agreement."  Compl. at ¶ 28.  Instead, plaintiffs' counsel stated, all of the claims underlying the "Contested Arbitration Demands" "were governed by the Florida MGA Agreement."  Compl. at ¶ 28.

### III.  Previous Litigation: "*Lincoln I*"

In an earlier case between Lincoln General and Access Holdings and certain of its subsidiaries, this court determined that Access Holdings was not bound by an arbitration provision in a "California Managing General Agency Agreement," the relevant terms of which appear to be verbally identical to those in the Florida MGA.  *See Lincoln General Insurance Co. v. Access Insurance Holdings Inc.* ("*Lincoln I*"), No. 05-201 (E.D. Pa.), *appeals docketed*, Nos. 07-1722; 07-1855 (3d Cir. March 2007).  The case involved a dispute over a claim arising from an automobile accident that involved a Lincoln General policyholder whose policy was managed by Access General Insurance of California ("Access California").  The insurance policy was issued, and the accident occurred,  before October 1, 2003, the date the PMA became effective.  However, Access California's alleged mismanagement of the claim occurred after October 1, 2003.

Lincoln General filed a "Motion to Compel Arbitration" arguing that Access Holdings, Access California, and other entities, including Access Claims Administrators, Inc. ("Access Claims"), agreed to be bound by the arbitration clause in the California MGA.  This motion did not refer to the PMA.  *See Lincoln I*, No. 05-201, docket # 1.

-8-

In December 2005, following a hearing, this court granted Lincoln General's motion to compel with respect to Access California; held the motion in abeyance, pending discovery, with respect to Access Claims; and denied the motion with respect to all other Access entities, including Access Holdings.

In April 2006, following discovery, Lincoln General filed a new motion to compel Access Claims and Access Holdings to submit to arbitration. *See Lincoln I*, No. 05-201, docket # 18. With regard to Access Holdings, Lincoln General argued that the business practices of the Access entities warranted piercing the corporate veil of Access California and compelling Access Holdings to submit to arbitration under the California MGA, either as a "real party in interest" or because Access Holdings bore joint responsibility for the actions of its subsidiaries. In support of this argument, for the first time in the litigation, Lincoln General submitted the PMA as evidence of the parties' business practices under the California MGA. Lincoln General argued that (1) the PMA "reflected how the parties conducted business during the handling of Lincoln General's private passenger automobile and physical damage insurance in various states, including California," Motion to Compel Arbitration ¶ 10, *Lincoln I*, No. 05-201, docket # 18, and (2) the PMA "confirmed that multiple Access entities, including Access General Insurance Agency of California, Inc., are under Access Insurance Holdings, Inc.'s common ownership or control." Brief in Support of Motion to Compel Arbitration at 27, *Lincoln I*, No. 05-201, docket # 19.

In February 2007, following another hearing, this court ruled, from the bench, that

-9-

neither Access Claims nor Access Holdings was bound under the California MGA to

submit to arbitration.  With respect to Access Holdings, the court determined that, under

California law, there were not grounds for piercing Access California's corporate veil and

compelling Access Holdings to arbitrate.  Concluding this analysis, this court addressed

the relevance of the PMA:

> The last point to be made is that on argument today Lincoln undertook to link its
> claim to a 2003 agreement entered into by Lincoln and Access, but that agreement,
> effective October, 2003, though actually not entered into and not executed until
> April of 2004, that agreement, even as to its effective date, post-dates by several
> months the accident, the tragic Diaz accident, which took place in March of 2003,
> followed by an April claim against - well, against Lincoln via its claims personnel.
> The agreement would not on its face seem to be one that would be retrospective in
> that sense relating to an accident that antedated the 2003 agreement's effective
> date, the accident itself of course coming under an insurance policy of an earlier
> date.
>
> Suffice it to say that the motion to compel arbitration was a motion -- is a
> motion that builds on the two agreements signed together on March 2, 2001 [*i.e.*,
> the California MGA and the Claims Agreement], those are the agreements that we
> have been discussing and those whose applicability to the obligation to arbitrate
> Lincoln's claims have been the subject of the litigation up to now.  And I conclude
> . . . that the obligation to arbitrate is one that does indeed run to Access California,
> . . . but there is no such obligation with respect to Access Claims . . . or Access
> Insurance Holdings.

Hearing Transcript 49:18-50:23*, Lincoln I*, No. 05-201 (February 12, 2007).

Lincoln General has appealed this court's determination that Access Holdings was

not bound by the arbitration provision of the California MGA, while Access California has

cross-appealed the determination that it was bound under that arbitration provision*.  See*

*Lincoln I*, No. 05-201, *appeals docketed*, Nos. 07-1722; 07-1855 (3d Cir. March 2007).

Lincoln General has not appealed this court's determination with respect to Access

Claims, but has filed an action in the Eastern District of California, which is still pending, alleging that Access Claims is liable for mishandling the claim at issue in *Lincoln I*.  *See Lincoln General v. Access Claims*, No. 07-1015 (E.D. Ca. filed April 4, 2007) ("*Access Claims*").

## IV.  Applicable Law

The arbitration provisions at issue in this action come under the aegis of the Federal Arbitration Act ("FAA").  Section two of the FAA, 9 U.S.C. § 2, "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts[.]"  *Buckeye Check Cashing Inc. v. Cardegna*, 546 U.S. 440, 443 (2006).

The parties to this case agreed, in both the PMA and the Florida MGA, to be bound by Pennsylvania law.  In determining whether parties have agreed to submit an issue to arbitration, "courts generally . . . should apply ordinary state-law principles that govern the formation of contracts."  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  As the Supreme Court has recently reiterated, however, the FAA's "national policy favoring arbitration" displaces any conflicting state law: "That national policy . . . appli[es] in state as well as federal courts and foreclose[s] state legislative attempts to undercut the enforceability of arbitration agreements.  The FAA's displacement of conflicting state law is now well-established, and has been repeatedly reaffirmed." *Preston v. Ferrer*, 128  S. Ct. 978, 983 (2008) (alterations in original, quotations and

internal citations omitted).  With respect to the instant action, Pennsylvania legal principles

do not appear to conflict with the "national policy favoring arbitration," and application of

those principles is therefore proper.


## V.  Discussion

Plaintiffs contend that they are not bound to arbitrate the claims underlying Lincoln

General's "Contested Arbitration Demands."  "[T]he question of 'whether the parties have

submitted a particular dispute to arbitration, *i.e.*, the '*question of arbitrability*,' is an issue

for judicial determination unless the parties clearly and unmistakably provide otherwise.'"

*Certain Underwriters at Lloyd's London v. Westchester Fire Insurance Co.*, 489 F.3d 580,

585 (3d Cir. 2007) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83

(2002)).  Such questions include disputes about (1) "'whether the parties are bound by a

given arbitration clause,'" or (2) "whether 'a disagreement about a concededly binding

contract applies to a particular type of controversy.'"  *Id.* (quoting *Howsam*, 537 U.S. at

83-84).

Plaintiffs raise the second of these questions in challenging whether the PMA's

arbitration provision — the validity of which is uncontested — compels them to arbitrate

Lincoln General's claims.  The parties to the PMA include Lincoln General, Access

Holdings, and Access Florida.  This contract became effective on October 1, 2003.  The

disputes underlying Lincoln General's "Contested Arbitration Demands" concern claims

that plaintiffs denied after October 1, 2003, and six of those claims arose from automobile accidents that occurred after that date.  However, each of these demands involves an insurance policy that was written prior to October 1, 2003.  Plaintiffs argue that the PMA arbitration clause does not cover claims arising from insurance policies issued before the PMA became effective.  Lincoln General contends that, regardless of when the insurance policies were issued, the PMA arbitration clause covers disputes over claims that Access Florida managed after the PMA became effective.

### A.  Issue Preclusion

Plaintiffs contend that, under the doctrine of issue preclusion, Lincoln General is barred from arguing that the scope of the PMA arbitration clause includes disputes concerning insurance policies issued before the date the PMA became effective.  In *Lincoln I*, this court stated that the PMA "would not on its face seem to be one that would be retrospective in that sense relating to an accident that antedated the 2003 agreement's effective date, the accident itself of course coming under an insurance policy of an earlier date."  Hearing Transcript 50:6-10, *Lincoln I*, No. 05-201 (February 12, 2007).  This statement, plaintiffs argue, precludes Lincoln General from arguing, in this litigation, that the scope of the PMA arbitration clause extends to disputes over claims on insurance policies written prior to the PMA's effective date.

This court's application of the issue preclusion doctrine is governed by Pennsylvania law.  *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508-09

(2001); *see also Prusky v. Reliastar Life Ins. Co.*, 502 F. Supp. 2d 422, 427 n.10 (E.D. Pa.

2007) ("[B]ecause our jurisdiction is based on diversity of citizenship, we apply the

Pennsylvania jurisprudence regarding *res judicata* and collateral estoppel.").  Under

Pennsylvania law "[i]ssue preclusion 'forecloses relitigation in a later action [ ] of an issue

of fact or law which was actually litigated and which was necessary to the original

judgment.'"  *Witkowski v. Welch*, 173 F.3d 192, 198-99 (3d Cir. 1996) (quoting  *Hebden v.*

*Workmen's Compensation Appeal Bd.*, 632 A.2d 1302, 1304 (Pa. 1993); *see also City of*

*Pittsburgh v. Zoning Board of Adjustment of Pittsburgh*, 559 A.2d 896, 901 (Pa. 1989);

*Dici v. Com. of Pa.*, 91 F.3d 542, 548).

      This court's statement in *Lincoln I* regarding the scope of the PMA lacks the first of

these requisite characteristics: the statement did not, in the relevant sense, pertain to an

"issue of fact or law which was actually litigated."  Under Pennsylvania law, "[a]n issue is

actually litigated," for the purposes of issue preclusion,  "when it is properly raised,

submitted for determination, and then actually determined."  *Commonwealth v. Holder*,

805 A.2d 499, 503 (Pa. 2002).  Lincoln General argued, in its second *Lincoln I* motion to

compel arbitration, that the PMA was relevant as evidence that "reflected how the parties

conducted business during the handling of Lincoln General's private passenger automobile

and physical damage insurance in various states."  At the February 2007 hearing, Lincoln

General observed that the PMA "merits consideration, just as evidence" of the parties

practices under the MGA.  *Id.* 14:23.  Neither Lincoln General nor the Access entities,

however, "properly raised," or "submitted for determination," the question whether the

PMA, by its own terms, had retrospective application.

It would therefore be inappropriate to give preclusive effect to this court's

statement, in *Lincoln I*, regarding the temporal reach of the PMA.  The basis of Lincoln

General's motion to compel arbitration, in that case, was the arbitration clause of the

California MGA.  Insofar as this court proffered a view as to the scope of the PMA

arbitration clause, that view was *obiter dictum* — and, it should be acknowledged, an ill-

founded one — that was not pertinent to the central issues before the court.  Those issues

were identified by the court directly following the *obiter dictum*:

> Suffice it to say that the motion to compel was a motion -- is a motion that builds
> on [the California MGA and the Claims Agreement], those are the agreements that
> we have been discussing and those whose applicability to the obligation to
> arbitrate Lincoln's claims have been the subject of the litigation up to now.

Hearing Transcript 50:11-16, *Lincoln I*, No. 05-201 (February 12, 2007).  Immediately

following this statement, the court "conclude[d]" that "the obligation to arbitrate" ran to

Access California, but not to Access Claims or Access Holdings.  This conclusion was not

derived from the court's observations regarding the scope of the PMA, and, consequently,

we cannot now bind Lincoln General by those observations.

**B.  Judicial Estoppel**

Plaintiffs argue that, whether or not the court's statement in *Lincoln I* regarding the

PMA should be given preclusive effect, Lincoln General should be barred, under the

doctrine of judicial estoppel, from arguing here that the scope of the PMA arbitration

-15-

clause includes disputes concerning insurance policies issued before the date the PMA became effective.  At the February 2007 hearing in *Lincoln I*, Lincoln General maintained, with respect to the insurance claim in that case, which stemmed from an accident that "occur[ed] in March of 2003," that "of course the policy is sold before that [date], so that the agreement that would have been in place at that time was the 2001 agreement." Hearing Transcript 12:17-20, *Lincoln I*, No. 05-201 (February 12, 2007).  Lincoln General then reasserted, in a complaint pending before the District Court for the Eastern District of California, that the California MGA governed Access Claims' responsibilities with respect to settling the claim at issue in *Lincoln I*.  *See* docket # 1, *Lincoln General v. Access Claims*, No. 07-1015 (E.D. Ca. April 4, 2007).

   In contrast to the doctrine of issue preclusion, which "is used to protect the finality of judgments and to conserve judicial resources," "judicial estoppel is concerned solely with protecting the integrity of the courts."  *Montrose Medical Group Participating Savings Plan v. Bulger*, 243 F.3d 773, 779 n.3 (3d Cir. 2001).  Application of the judicial estoppel doctrine is, accordingly, proper only if "a litigant has taken one or both  positions 'in bad faith—i.e., with intent to play fast and loose with the court.'"  *Id.* at 780-81 (internal quotation omitted).  Because the purpose of judicial estoppel is to protect the interests of the court, rather than those of litigants, "it does not constitute bad faith to assert contrary positions in different proceedings when the initial claim was never accepted or adopted by a court or agency."  *Id.* at 782.

-16-

Within this framework, Lincoln General's arguments in the instant action do not evince "bad faith" when considered in light of Lincoln General's position before this court in *Lincoln I* and its reassertion of that position before the District Court for the Eastern District of California in *Lincoln General v. Access Claims*. Lincoln General did not contend, in *Lincoln I*, that Access Holdings was compelled by the PMA arbitration clause to submit to arbitration. What Lincoln General instead contended was that the PMA served as evidence of Access Holdings' business practices under the California MGA — a contention that this court found unpersuasive. The District Court in California, which has not yet addressed the merits of Lincoln General's allegations in *Lincoln General v. Access Claims*, has likewise not "accepted or adopted" Lincoln General's position. *Montrose*, 243 F.3d at 782. It is conceivable that the parties' resources would have been more efficiently channeled if, in *Lincoln I*, Lincoln General had invoked the PMA arbitration clause as the basis for its motion to compel — a contention that might have precipitated a ruling that would have operated to foreclose subsequent litigation over the issues that are now engaging the parties' energies. Lincoln General's failure to do so, however, does not appear to have redounded to its advantage, and has not "assaulted the dignity or authority of the court." *Id.* at 781. The court will therefore decline to apply judicial estoppel.

### C.  Scope of the PMA

The court must therefore turn to the merits of Lincoln General's argument that the PMA arbitration clause covers the disputes underlying the "Contested Arbitration

Demands."  In addressing its argument, insofar as the scope of the PMA arbitration clause is ambiguous with respect to the arbitrability of the matters in contention, the court must presume that the parties agreed to arbitrate those matters.  "In construing the scope of an arbitration clause, courts generally operate under a pronounced presumption of arbitrability[.]" *Battaglia*, 233 F.3d at 725 (internal quotation omitted).  Consistent with this federal policy, Pennsylvania case law holds that "an order enjoining arbitration of a particular grievance should not be granted unless it may be said with positive assurance that the arbitration clause involved is not susceptible to an interpretation that covers the asserted dispute."  *McCarl's, Inc. v. Beaver Falls Municipal Authority*, 847 A.2d 180, 185 (Pa. Commw. Ct. 2004) (quoting *Lincoln Univ. of the Commonwealth Sys. of Higher Educ. v. Lincoln Univ. Chapter of the Am. Ass'n of Univ. Professors*, 354 A.2d 576, 581-82 (Pa. 1976) (internal quotation omitted)).

Analyzing plaintiffs' claim within this framework, the court cannot say "with positive insurance" that the PMA arbitration clause "is not susceptible to an interpretation that covers" the disputes underlying the "Contested Arbitration Demands."  Each of the claims in the "Contested Arbitration Demands" was rejected by Access Florida after October 1, 2003, and six of those claims concern accidents that occurred after that date.  Prior to October 1, 2003, the legal relationship between Lincoln General and other Access entities was controlled by several agreements, including the Florida MGA and Claims Service Agreement.  But the PMA, which had an effective date of October 1, 2003,

provides that it "constitutes the entire agreement of the parties with respect to the subject matter herein and supersedes any other previous agreements . . . between the Company and the Manager."  PMA art. XX ¶ J.  The "subject matter" of the PMA includes "Manager's authority, if any, to adjust, compromise or pay any claim made on policies written *or bound* under th[e] Agreement."  PMA art. IV (emphasis added).

The PMA arbitration clause, which binds both Access Holdings and Access Florida, covers "any dispute between the Company and the Manager with reference to the interpretation, application, formation, enforcement or validity of th[e] Agreement, or their rights with respect to any transaction involved."  PMA art. XIX ¶ A.  It is, at the very least, an open question whether insurance policies written under the Florida MGA became "bound under" the PMA after October 1, 2003.  If these policies did, indeed, become "bound under" the PMA, then a dispute over Access Florida's management of claims arising after October 1, 2003 would doubtless constitute a "dispute" concerning the "application" or "enforcement" of the agreement.

Plaintiffs would have the court consider, as relevant to its interpretation of the PMA arbitration clause, Lincoln General's position in *Lincoln I*, and subsequently in *Lincoln General v. Access Claims*, that the California MGA governs the parties' obligations with respect to the claim at issue in that case.  This extrinsic evidence with respect to the two California-related controversies, insofar as it is of any pertinence here, does not unambiguously demonstrate an intent by the parties to the Florida-related controversy now

-19-

before this court to limit the scope of the PMA arbitration clause to Florida claims arising

from policies issued after October 1, 2003.  Moreover, Lincoln General's failure, in

*Lincoln I* or otherwise, to exercise rights that it now argues to be in the contract does "not

constitute a waiver of any rights provided under this Agreement, or stop the parties from

thereafter demanding full and complete compliance or prevent the parties from exercising

such a remedy in the future."  PMA art. XX ¶ B.  Plaintiffs thus cannot show that, based

on the facts alleged, it is unambiguously entitled to ignore Lincoln General's "Contested

Arbitration Demands."  The court therefore concludes that, under the facts alleged in

plaintiffs' complaint, there is no basis for ordering a stay of arbitration.


## VI.  Conclusion

Accordingly, defendant's motion to dismiss plaintiffs' complaint will be granted.

Concomitantly, plaintiffs' motion to stay arbitration will be dismissed as moot.  An order

effectuating these rulings accompanies this memorandum.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ACCESS INSURANCE HOLDINGS, INC., and ACCESS GENERAL AGENCY OF FLORIDA, INC., Plaintiffs, v. LINCOLN GENERAL INSURANCE COMPANY, Defendant. | Civ. No. 07-3313 |

## ORDER

March 28, 2008

For the reasons set forth in the accompanying memorandum, it is ORDERED that:

(1) defendant's "Motion to Dismiss Complaint to Stay Arbitration and for Declaratory

Relief," docket # 10, is GRANTED, and (2) plaintiffs' "Motion to Stay Arbitration,"

docket # 3 is DISMISSED as moot.

BY THE COURT:


/s/ Louis H. Pollak

Pollak, J.